## Case No. 760.

### BAIRD v. WOLFE.

### [4 McLean, 549.][1]

Circuit Court, D. Indiana. May Term, 1849.

EJECTMENT—INTERESTED PARTY — WITNESS—LIMITATION OF ACTIONS — EQUITABLE TITLE —PRESUMPTION OF TITLE FROM POSSESSION.

1. A witness, at whose instance an ejectment is brought, and who is the assignee of a part of the consideration, for which the land was sold, and the suit being brought, on a failure to pay the consideration, is not a competent witness.

2. The statute of limitations does not run against an equitable title, nor in favor of one.

3. A presumption of a title may arise from long possession, and under such circumstances as are favorable to such a presumption.

4. But, it may be rebutted by circumstances or positive proof. In many cases the court will refer the presumption to the jury for their consideration and decision.

[5. Cited in Mezes v. Greer, Case No. 9,- 520, to the point that a certificate issued under authority of an act of congress authorizing a person to locate 400 acres of land within the time and place limited does not convey the legal title until the segregation of the land is completed.]

[6. Cited in Mezes v. Greer, Case No. 9,- 520, to the point that an equitable claim, how-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

ever strong, cannot be set up at law to defeat the legal title. See Willink v. Miles, Case No. 17,768; Larriviere v. Madegan, Id. 8,096.]

[At law. Action of ejectment by the lessee of James Baird, and Peter Bartmoss, against Benjamin Wolfe. Verdict and judgment for plaintiffs.]

Smith & Sullivan, for plaintiffs.
Mr. Judah, for defendant.

THE COURT, (charging the jury.) Patent for the land in controversy, was given in evidence, to James Baird or to his legal representatives, for four hundred acres, dated 21st September, 1847. Peter Bartmoss and Eli Adams being sworn, proved the heirship of the lessors of the plaintiffs. Mr. Ewing being offered as a witness, was objected to, on the ground of interest. It appears that he commenced the suit and procured Mr. Browning to become security for costs, and it was alleged, promised to indemnify him. Mr. Browning on being examined, said Ewing informed him, when he applied to him to indorse for costs, that the party was good, but did not specially promise to indemnify him. But the witness expected Ewing would not permit him to be injured. It appeared that Ewing was the assignee of a small part of the consideration agreed to be paid for the land. The witness was admitted to give evidence, by the court, subject, at any future stage of the case to be overruled. A deposition was offered which was taken under a rule of court, which authorized depositions to be taken under the laws of the state. Those laws specify certain cases in which depositions of witnesses may be taken, which do not require the reasons for taking them to be stated. The plaintiff claims a right to take them because they live more than one hundred miles from the place of holding the court. The deposition can not be received as having been taken under the act of congress, as the requisites of that act have not been complied with. Is the deposition admissible as having been taken under the laws of the state? The rule of court may be so construed, as to embrace merely the mode of taking depositions, where the right exists under the act of congress. The deposition was admitted on parol proof that the witness lives more than one hundred miles from the place of holding the court.

The land in controversy was not acquired in the ordinary mode of entry and payment, in the register's and receiver's offices, under the act of congress. On the 21st of April, 1806, [2 Stat. 395,] an act was passed, authorizing the registers and receivers of public moneys of the district of Vincennes and Kaskaskias, under the direction of the secretary of the treasury, to lay out one or more tracts of land in their respective districts, for the purpose of locating therein, tracts of land granted by virtue of any legal French or British grants, or of any resolution, or act of con-

gress, etc. The claims of the character above stated, under various subsequent acts of congress, and the action and reports of the land officers were examined, and confirmed by congress, and certificates were issued which authorized the person to whom issued, to locate the tract within the time and place limited. This tract of four hundred acres was acquired in this mode. It was located by Baird, who sold the land to Duncan, and who, it is alleged, never paid the full amount of the consideration. Ewing was the assignee of the consideration to be paid, two hundred and fifty dollars with interest, and suit is commenced to recover the possession, by reason of the failure to pay the consideration in full.

The agreement for the sale of the land to Duncan, was proved, and that an imperfect deed was made out by Baird, which, together with the agreement, was placed in the hands of Ewing in June, 1824. In 1825, the witness's house was burnt, and these papers were burnt with it. It seems two hundred and fifty dollars of the purchase money remained unpaid, and of which Ewing was the assignee. And Ewing states, that from year to year, from 1819, at the time of the sale, to 1824, Duncan promised payment. One witness, who was one of Duncan's executors, and who examined his papers, never saw a receipt for the balance of the purchase money. He never saw a deed from Baird for the land. In 1835-6 believes Wolfe claimed the whole tract. He claimed the whole of it prior to the sheriff's sale. Wolfe took possession of the land in 1840 or '41. He purchased from Sloan, and one of the witnesses stated that he had seen a deed from him to Wolfe. The above is the ground on which the plaintiffs rest to recover the possession of the land. The legal title being in them under the patent, and a part of the consideration money not being paid.

The defense, gentlemen of the jury, is, first, that the purchase money has been paid. A receipt is produced, which, it is alleged, was given for the balance of the purchase money. The genuineness of the receipt, and the circumstances under which it was procured, are for your determination. If you shall find that the consideration money has been fully paid, it will take away from the plaintiffs all equitable considerations, and leave them only the claim to the legal title. On the part of the defendants, it is insisted, that the act of congress confirming the right to this tract to the original claimant, under the report of the register and receiver, vested in the claimant the legal title. This was not the effect of the confirmation. It was the right to four hundred acres of land which was confirmed, and not any particular tract of land. The certificate which the claimant received, as evidence of his right, authorized the location of four hundred acres of land, but, until such location was made, the claim was without locality, except within the district des-

ignated, for the satisfaction of such claims. A legislative act confirming a title, which was in its terms final, and required no further action of the government, would be considered a grant. But the right before us was not of this character.

The statute of limitations of twenty years is relied on, as a bar to the plaintiffs' recovery. To maintain this defense an adverse title must be shown. Since 1814, this claim appears to have been under Duncan, and there would seem to be no claim of an adverse character, unless it can be set up under the sheriff's deed. An equitable claim, however strong it may be, can not be set up at law to defeat the legal title. Nor can the statute of limitations be pleaded as a bar to a legal title, where the defendant has only an equity. Until the emanation of the patent in 1847, the legal title to the land in dispute, it is contended, remained in the United States. The statute does not run against the government, nor against an individual who holds only an equitable title. By Rev. St. [Ind.] 1843, p. 455, [§ 9,] an individual who holds a final certificate for lands purchased from the United States is vested with the legal title, so as to subject it to the lien of a judgment, and to execution, as where the patent has issued. But this law was not passed until after the above transaction. As the law then stood, the equitable title could not be sold on execution, and a sheriff's deed, it is supposed, on a sale of the equity merely, could not convey a title which could be set up under the statute. A title may be set up under the statute, which is fair upon its face, but inoperative, as it was adopted to protect a bona fide holder under such a title. But a sheriff's title must be considered as essentially connected with the judgment; and when the sheriff attempts to sell that which is not subject to execution, he can convey no title, and a void title is not one which the statute will protect. The purchaser, at most, in such a case, could take only the right held by the defendant in the judgment; and that right being only an equitable one, could not avail the defendant against the legal title. Ewing is an interested witness, as the recovery is for his benefit; and it appears by a contract with Bartmoss he is responsible for the costs, and what he has said is withdrawn from the jury. But waiving a reliance upon the statute of limitations, the counsel for the defendant relies on the presumption of a deed to Duncan.

This presumption is founded, 1. On a possession of thirty-five years. 2. No contract respecting the title was known for a long time. 3. That Duncan had the ability to pay the amount. 4. The receipt of the balance by Sullivan to be paid on the execution of the deed. 5. Acquiescence of the claimants in the sheriff's sale to defendant. 6. The loss of the recorder's office in Knox county, by fire. 7. The recital in the deed from Duncan to McCall. 8. The controversy between Duncan and Tuckers, in which Duncan said he had left his title at home. The presumption of title arises from lapse of time and circumstances, which may, however, be rebutted. When an individual has been a long time in the possession of the property, and there are no facts proved which go to rebut such presumption, the court will leave the question to the jury whether a title may not be presumed. But in this case, although the possession has been in the defendant and those who preceded him in the claim of purchase many years, yet there are facts which conduce to show that the whole of the consideration money has not been paid; and the deed to Duncan was not to be executed until the whole of the purchase money should be paid. It is true there is an acknowledgment of the receipt of the consideration on the deed, but this is not conclusive and may be explained. Indeed in all conveyances the consideration is acknowledged.

The receipt to Sullivan, if genuine, shows an intention by Duncan to pay the balance, but it does not appear that Sullivan was acting as the agent of Baird, or that he had a right to receive the money. In receiving it he acted as the agent of Duncan, and unless it was paid over, to the proper persons, Duncan could not claim a credit for it. The money it seems, was to be paid when the deed was executed. The deed that was made out by Sullivan for Baird was defective in not describing the boundaries of the tract, and it seems that this deed was never delivered. There is no controversy as to the whole of the consideration being paid, except the two hundred and fifty or fifty-four dollars. Now, this will explain why the possession of the land was taken and improvements made, by the acquiescence of those who obtained the patent. Until the patent was obtained, Baird could not make a deed that would be operative from its date. The patent, it seems, was not issued until 1847. A deed made before that time to Duncan, would have been made good by the patent, but the date of the patent is of some importance; as it may, in some degree account for the reason why a deed was not made to Duncan. And also the recognition or admission, at different periods by Duncan, that the above small balance was due.

Upon the whole the facts are left with the jury, whether from a deliberate consideration of them, the jury can presume a deed from the lessors of the plaintiffs, or from their ancestor. If there be anything in the case to make the presumption doubtful, as to a deed having been executed to Duncan, it will not be presumed. Jury found for plaintiff. Judgment.